FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 05, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN H.,[1]<br><br>                    Plaintiff,<br><br>        v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[2]<br><br>                    Defendant. | No.   1:25-cv-3002-EFS<br><br>**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff John H. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. As is

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

DISPOSITIVE ORDER - 1

explained below, by not calling a medical expert, the ALJ erred when evaluating Plaintiff's symptom reports and the medical opinions. This matter is remanded for further proceedings.

## I.     Background

Plaintiff applied for benefits, claiming disability beginning August 1, 2019, because of diabetes, heart issues, bilateral arm impairments, lower back impairment, memory loss, dizziness, fainting, and neuropathy in his hands, knees, and feet.[3] On the disability onset date, Plaintiff was 55 years old, which is categorized as advance age.[4] The agency denied benefits; and thereafter, ALJ Malcom Ross held a telephone hearing in August 2023, at which Plaintiff and a vocational expert testified.[5]

---

[3] AR 234–39, 248–51.

[4] AR 85; 20 C.F.R. §§ 404.1563(e), 416.963(e).

[5] AR 145–66, 48–82.

The ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence."[7] As to the medical opinions, the ALJ found:

- the reviewing opinions of Howard Platter, MD, and Colleen Ryan, MD, persuasive.
- the examining opinions of Rachel Worley, NP-C, and treating opinions of Braiden Heath, PA-C, not persuasive.[8]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2021.

---

[6] AR 14–31. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 22. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[8] AR 24–25.

- Step one: Plaintiff had not engaged in substantial gainful activity since August 1, 2019, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: diabetes and peripheral neuropathy.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform medium work except:

  he can stand and/or walk for a total four hours in an 8-hour day. He can frequently climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. He can have occasional exposure to hazards, such as dangerous machinery. He can have no exposure to unprotected heights.

- Step four: Plaintiff could perform past relevant work as a telephone solicitor and therefore was not disabled.[9]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[10]

---

[9] AR 17–26.

[10] AR 1–6; ECF No. 1.

1

## II.    Standard of Review

2

The ALJ's decision is reversed "only if it is not supported by

3

substantial evidence or is based on legal error" and such error

4

impacted the nondisability determination.[11] Substantial evidence is

5

"more than a mere scintilla but less than a preponderance; it is such

6

relevant evidence as a reasonable mind might accept as adequate to

7

support a conclusion."[12]

8

_____

9

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

10

405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ),

11

*superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that

12

the court may not reverse an ALJ decision due to a harmless error—

13

one that "is inconsequential to the ultimate nondisability

14

determination").

15

[12] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

16

980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

17

1035 (9th Cir. 2007) (The court "must consider the entire record as a

18

whole, weighing both the evidence that supports and the evidence that

19

detracts from the Commissioner's conclusion," not simply the evidence

### III.   Analysis

Plaintiff argues the ALJ erred both by rejecting Plaintiff's symptom testimony and by finding the State agency medical consultants' administrative findings "persuasive" when he instead crafted an RFC that varied from those findings. In contrast, the Commissioner maintains that the ALJ's findings were supported by substantial evidence and that any possible error is harmless. As is explained below, by not calling a medical expert to offer testimony as to the etiology of Plaintiff's symptoms, the ALJ erred when evaluating Plaintiff's reported symptoms.

### A.   Symptom Reports: Plaintiff establishes consequential error.

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were not entirely consistent with the medical evidence and other evidence in the

_____

cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

record.[13] As is discussed below, this finding is not supported by substantial evidence given the ALJ's failure to call a medical examiner to offer an opinion based on the complete record, which included about a year of treatment records that were not reviewed by the State agency medical consultants—records which revealed that providers continued to order testing to explain the cause of Plaintiff's symptoms.

1.   <u>Standard</u>

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[14] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[15] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical evidence, 2) daily activities; 3) the location, duration,

---

[13] AR .

[14] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

[15] *Id.* at 499.

frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[16]

### 2. Plaintiff's Reported Symptoms

The medical records reflect that Plaintiff reported problems with syncope and dizziness as early as 2020. Testing at that time revealed that Plaintiff had diabetes and an observed mass on the right side of his neck.[17] In early March 2021, when having a renal duplex examination for his kidneys, Plaintiff reported to treating providers that he was getting lightheaded and fatigued when he tried to walk.[18]

---

[16] 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c). *See also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[17] AR 538–62.

[18] AR 676–79.

In January 2022, an Adult Function Report was prepared on Plaintiff's behalf.[19] Plaintiff reported that he was able to dress himself, although he reported he does not have any feeling in his back. Plaintiff also shared that he was homeless and sleeping in a tent that did not have a bathroom. He cooked simple meals such as oatmeal and soup. He had difficulty standing for long. He drives although his lower back can cause pain if he sits too long. He can shop for groceries and for personal needs; however, he does not go out much given that he has limited funds. While he did not have a savings account or a checkbook, he was able to pay bills and count change. He also reported that, although he did not have difficulty following instructions, getting along with others, or handing changes in routine, he does have difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, using his hands, completing tasks, and with his memory, concentration, and understanding.

During the hearing in August 2023, Plaintiff testified that it was difficult for him to hold the cellphone during the hearing due to his

_____

[19] AR 284–91.

neuropathy and so he had it on speaker.[20] He shared that during his last job he would get dizzy when putting shrink wrap around materials on a pallet, causing him to fall into the material and knock it all over.[21] He testified that he has a hard time holding his head up when he is sitting or standing due to extreme fatigue in his neck muscles, he suffers from vertigo and so will need to sit down, he has neuropathy that makes it difficult to feel his fingers and at times his legs go numb, and he has difficulty opening the lid on a gallon of milk at times.[22] He stated that there has not been a medical answer for his neuropathy yet.[23] He also experiences nausea and he has diabetes, which he maintains through diet and keeping his blood sugar down.[24] He reported that it is difficult for him to cook a meal, such as breakfast,

---

[20] AR 66, 68.

[21] AR 67.

[22] AR 67–68, 70.

[23] AR 68–69.

[24] AR 70–71.

due to his fatigue.[25] He also testified that he has fallen when walking short distances to water a plant, that he has about 5–6 days a month during which he has extreme fatigue, and when he drives he uses the headrest to help support his head.[26]

3.    ALJ's Reasons and Analysis

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his medically determinable impairments were not entirely consistent with: 1) ) the inconsistent symptom reports he gave to treating providers; 2) the objective medical evidence, which did not establish an etiology for Plaintiff's extreme symptomology, contained benign clinical presentations, lacked evidence of injuries from fainting or falling, lacked evidence of an assistive device, and contained few missed, cancelled, or rescheduled appointments; and 3) Plaintiff's activities.[27]

_____

[25] AR 72.

[26] AR 73–74.

[27] AR 21–24.

1

   4.  <u>Analysis</u>

2

   While the ALJ gave several reasons for discounting Plaintiff's

3

symptom reports, the ALJ's overall symptom-analysis was

4

consequentially impacted by the failure to call a medical expert to

5

review the medical records from October 2022 onward, medical records

6

which discussed continued treatment and testing in hopes of finding

7

the cause for Plaintiff's reported syncope and dizziness. Neither of the

8

State agency medical consultants were able to review the medical

9

records after September 2022: Dr. Platter reviewed the file in March

10

2022, and Dr. Ryan reviewed the record in September 2022. As is

11

discussed more below, the later medical records revealed decreased

12

sensation to touch in foot and ankle, two motor nerve conduction

13

studies that were consistent with severe polyneuropathy; and an

14

echocardiogram showing continued cardiac conditions, including severe

15

left atrial enlargement.[28]

16

         a.   <u>*The ALJ's finding that Plaintiff's reported symptoms*</u>
<u>*were inconsistent with his denial of symptoms is not*</u>

17

<u>*supported by substantial evidence.*</u>

18

_____

19

[28] AR 713–89.

Instead of calling a medical expert to review the more recent medical records and testify as to the medical findings and offer a medical opinion as to whether these conditions could contribute to his symptoms or affect his physical ability to work, the ALJ focused on prior medical records noting that Plaintiff at times denied dizziness, fatigue, and weakness. Based on these medical records reflecting denied symptoms, the ALJ discounted Plaintiff's reported dizziness, fatigue, and weakness.[29] While the ALJ's assessment of the cited records was mostly accurate, the ALJ's focus on these portions of the treatment records unfairly emphasized these "negative" reports,

_____

[29] AR 22 (AR 554–59 (Jan. 26, 2021: containing varying statements about symptoms); AR 535 (Feb. 24, 2021: treatment for diabetes during which he does not report fatigue or dizziness); AR 505–57 (Aug. 5, 2021: treatment for diabetes during which he reports that dizziness was starting to go away); Aug. 24, 2021: citing AR 397 (seeking Covid testing to return to homeless shelter); AR 701–05 (March 17, 2022: treatment for diabetes, murmur, and tear of left biceps muscle, during which it was noted that Plaintiff did not report fatigue or dizziness).

without considering that the longitudinal treatment record reflected that Plaintiff often reported dizziness, fatigue, and weakness, and continued to seek treatment in hopes of learning the cause, and his providers continued testing to find the cause. For instance, during the time span involved in the cited records, Plaintiff had reported during a March 2021 appointment lightheadedness and fatigue when trying to walk,[30] and during a May 2021 appointment he reported dizziness, a syncopal episode, fatigue, and shortness of breath when walking, along with a neck mass.[31] During the February 2022 consultative examination, Plaintiff reported problems with dizziness when changing positions, and was observed with a slow gait, a positive Romberg test, and an inability to heel-toe walk without assistance due to unsteadiness, with the evaluator stating, "[d]uring the physical exam claimant experienced dizziness when going from sitting to standing

---

[30] AR 676.

[31] AR 415–17, 523–28.

position. The claimant had to rise slowly and wait a minute prior to ambulating."[32]

Consistent with these observations during the consultative examination, a year later during an appointment with a neurologist to help determine the cause for his episodes of lightheadedness, feeling off-balance, and vision changes, along with numbness in his face and weak grip strength, Plaintiff was again observed with a large lump on his neck; a 4/6 systolic murmur; decreased sensation to touch, temperature, vibration to foot and ankle in L4, L5, and S1 dermatomes; a positive Romberg; and an inability to perform tiptoes, heel to toe, or heel due to feeling dizzy.[33]

This longitudinal medical record does not provide substantial evidence to support the ALJ's decision to discount Plaintiff's reported symptoms of dizziness, fatigue, and weakness because some of the medical records indicated that no such symptoms were reported.

---

[32] AR 691.

[33] AR 734–37.

Moreover, one of the treatment records cited by the ALJ did contain a note that Plaintiff reported dizziness for the last 8 months.[34]

      *b.*    *The ALJ's finding that Plaintiff's reported symptoms are inconsistent with the objective medical evidence is not supported by substantial evidence.*

The ALJ's analysis of the objective medical evidence—and findings that Plaintiff's clinical presentations were typically benign, that he was able to attend appointments without rescheduling, that there was no evidence of injuries from fainting or falling or need to use an assistive device—was consequentially impacted by the ALJ declining to have a medical examiner review the more recent medical records and testify at the hearing. The longitudinal medical record, which predominately spans from August 2020 to July 2023, reflects

---

[34] AR 554–59 (Jan. 26, 2021: treatment for diabetes, dizziness, mass in neck, and hypotension, for which the treatment record notes that an EKG shows sinus tachycardia with LVH and significant orthostatic hypotension and that the diabetic medications is not helping with dizziness and blurry vision for the last 8 months, but then in another section it states that he did not report fatigue or dizziness).

that Plaintiff's treating providers continued to search for a source for his dizziness and syncope issues. Although the ALJ highlights that providers initially suspected during the summer of 2021 that dehydration played a role,[35] the cited record also states, "given that he has an elevated resting rate which can also be the reflex for hypovolemia from dehydration, we will have him do a 24-hour monitor to assess for any significant arrhythmic basis for his dizzy spells."[36] Testing revealed "grade 4 harsh ejection systolic murmur in the upper sternal borders and radiating down into the apex."[37]

The ALJ highlighted that during the consultative examination with Nurse Worley in February 2022 Plaintiff had normal strength, muscle bulk, and sensation in the lower extremities, but Nurse Worley also had the following observations consistent with Plaintiff's reported symptoms: Plaintiff had mild difficulty rising from the chair and walking to the examination table and then getting on and off the

---

[35] AR 22 (citing AR 386).

[36] AR 386.

[37] AR 388.

examination table, a HR 108 bpm with systolic murmur left of sternal border 2/6, a slow baseline gait, unsteadiness while trying to heel-toe walk, positive Romberg test, and that Plaintiff had to rise from sitting slowly and wait a minute before ambulating.[38]

In June 2022, imaging revealed inflammatory changes in the left medial gluteal region, decreased density of the liver suggestive of fatty infiltration, small hiatal hernia, mild atherosclerotic disease, and calcifications involving the vax deferens.[39] In February 2023, the provider's observations were largely normal except for decreased sensation to touch in Plaintiff's foot and ankle, a positive Romberg test, inability to perform tiptoes, heel to toe, and heel due to feeling dizzy, and so the provider recommended that Plaintiff go to the emergency department, ordered an EEG and a nerve conduction study, and sent an urgent referral to cardiology due to concern about possible cardiogenic syncope.[40] The EEG of the brain was conducted in March

---

[38] AR 682–91.

[39] AR 846–47.

[40] AR 734–37.

2023, which came back with normal wake findings.[41] The motor nerve conduction studies were held in May and June 2023, with results indicating severe polyneuropathy.[42] And the most recent medical record of July 19, 2023, was an echocardiogram report that revealed moderate eccentric anteriorly directed jet of mitral valve regurgitation, trace aortic valve regurgitation, and severe left atrial enlargement.[43]

By not having a medical examiner at the administrative hearing who could review the more recent medical records for the most recent 12 months, which comprised almost a third of the period covered by the relevant medical records, the ALJ erred. The ALJ is not medically qualified to determine whether the more recent observations and test results were consistent with Plaintiff's reported symptoms. Without testimony from a qualified medical examiner, the ALJ's finding that Plaintiff's "benign clinical presentations" of presenting as alert and fully orientated and without problems in concentration or fatigue, and

_____

[41] AR 734–37, 722.

[42] AR 724–43.

[43] AR 780.

1   with often normal findings in gait, stance, coordination, strength, and

2   reflexes were inconsistent with Plaintiff's reported symptoms is not

3   supported by substantial evidence.[44]

4               c.      *The ALJ's finding that Plaintiff's symptom reports*

5                       *were inconsistent with his activities is not supported by*
                        *substantial evidence.*

6           Finally, the ALJ discounted Plaintiff's reported symptoms

7   because they were not entirely consistent with his ability to walk and

8   drive and his independence in most daily activities, including chores,

9   cleaning, cooking, transportation, and self-care/hygiene. As to

10  Plaintiff's driving, the ALJ did not consider that when Plaintiff is

11  driving, he can support his head on the headrest and he is not

12  changing positions; moreover, there is no mention in any of the

13  treatment records that Plaintiff drove long distances. Also, the ALJ's

14  reliance on Plaintiff's daily activities fails to appreciate Plaintiff's

15  living arrangements, which did not require him to engage in many

16  chores. During the relevant period, Plaintiff either lived in his car, in a

17  camper/trailer, or at the Camp Hope homeless shelter. The ALJ fails to

18  _____

19  [44] AR 22.

clearly explain how Plaintiff's independence in "chores, cleaning, cooking, transportation, and self-care/hygiene" was inconsistent with his reported symptoms.[45] On this record, the ALJ's finding that Plaintiff's activities were not entirely consistent with his alleged level of functional limitation is not supported by substantial evidence.[46]

### d. *Conclusion*

The ALJ's finding that Plaintiff's symptom reports were "not entirely consistent" with the record is not supported by substantial evidence. The ALJ's decision not to call a medical expert to testify at the hearing and offer an opinion based on the more recent medical records, before discounting Plaintiff's symptom reports contributed to this error.[47] While an ALJ is given the discretion to determine whether to call a medical expert to "clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory,

---

[45] AR 23.

[46] *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

[47] Program Operations Manual System, HA 01250.034.

inconsistent, or confusing" or there are "question(s) about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time," the ALJ consequentially erred by not exercising this discretion to call a medical expert to resolve these conflicts/questions and instead proceeded himself to interpret the medical record in a manner that unfairly gave more weight to the "benign" observations. "The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[48] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[49] The ALJ erred here by failing to develop the record before discounting the Plaintiff's symptom reports based largely on the ALJ's own interpretation of the more recent medical records, which related to ascertaining the cause of Plaintiff's syncope, dizziness, and fatigue.

---

[48] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[49] *Id.* at 1184.

**B.    Medical Opinions: the ALJ must reconsider on remand.**

Plaintiff also argued that the ALJ erred by finding the no-limitation opinions of the State agency doctors persuasive but then proceedings to craft an RFC that contained some limitations, thereby actually not finding these opinions fully persuasive. Because this matter is being remanded due to the ALJ's errors when evaluating Plaintiff's symptom reports, the ALJ is to reevaluate the medical opinions on remand. The ALJ is to be mindful that if a medical opinion is not fully adopted, then its likely the ALJ should find that opinion only somewhat or partially persuasive, not fully persuasive.

**C.    Remand: further proceedings**

Plaintiff seeks a remand for payment of benefits. However, further development is necessary for a proper disability determination, including both the development of the medical record and either ordering a new consultative examination by a qualified medical provider, who is to be given a copy of sufficient longitudinal medical records to aid that examiner in reaching an opinion as to etiology for and impact of symptoms, and/or calling a medical expert qualified to

testify as to polyneuropathy, diabetes, and the cardiac conditions.[50] The ALJ is to then reconsider the medical evidence, Plaintiff's symptom reports, and reevaluate the sequential process.

## IV.  Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[50] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 5th day of June 2025.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2025\25cv3002. John H. final.lc1.docx